151 So.2d 646 (1963)
Karl R. HIEBER, Appellant,
v.
Bertha HIEBER, Appellee.
No. 62-392.
District Court of Appeal of Florida. Third District.
April 9, 1963.
*647 Turner, Hendrick, Fascell & Guilford, Coral Gables, and John Kirk McDonald, Perrine, for appellant.
John H. Gunn and Irving M. Hartman, Miami, for appellee.
Before CARROLL, BARKDULL and HENDRY, JJ.
HENDRY, Judge.
This is an appeal from a final decree entered in a suit wherein the appellant-husband sued the appellee-wife for divorce, and the wife counterclaimed for separate maintenance and cancellation of a separation and property settlement agreement. The husband alleged in his complaint that his wife had been guilty of extreme cruelty in that she had continually nagged and complained to him, made his life unbearable, was cold towards him and performed her wifely acts in an indifferent manner. It was also alleged that the parties had settled their property rights by agreement.
The wife filed an answer denying the charges in the complaint, and counterclaimed for separate maintenance under § 65.09, Fla. Stat., F.S.A., and for cancellation of the separation and property settlement agreement which the parties had entered into. In her counterclaim for separate maintenance she alleged that her husband continually and habitually exhibited towards her a violent and ungovernable temper and frequently committed acts of violence towards her. It was further alleged that he called her vile names, refused to go out with her socially, and that he had visited Germany without her in 1955, 1958 and 1959. She alleged that she was unable to work because her health was adversely affected by her husband's abusive treatment of her during all the years of her marriage. She requested the court to award her both temporary and permanent alimony unconnected with divorce. She further requested that her husband be required to pay her attorneys' fees and costs in the action.
In the counterclaim for cancellation of the separation and property settlement agreement, the wife alleged that on the 3rd day of December, 1959, while the parties were residing together in Buckingham, Pennsylvania, they executed said agreement;[1] that prior to and at the time of the execution of said agreement between the parties, the plaintiff, in order to induce defendant to enter into said agreement, falsely represented to defendant the value of the acreage, house, apartment and shop *648 building by stating that it could readily be sold for an amount well in excess of $100,000; that defendant, in executing said agreement, relied upon said representation made by the plaintiff as to the value of said realty; that in the event plaintiff did not falsely represent the value of said realty to defendant, there was a mutual mistake as to the value of said realty on the part of both parties, in that it was contemplated that a sum in excess of $100,000 would be realized upon the sale of said realty whereas said sale only resulted in the net receipt of $23,300.33 by each of the parties; that if it had not been for said false representation by plaintiff, or said mutual mistake of fact, defendant would not have entered into said agreement; that there was no meeting of the minds of the parties on said agreement which should therefore be cancelled and set aside.
The defendant denied all the charges in the counterclaims and the case proceeded to trial before the chancellor. After hearing the testimony of the witnesses and argument of counsel, the chancellor entered a final decree, which, in part, provided:
"The equities are with the Defendant Counter-plaintiff and her Counterclaim for Separate Maintenance of and from the Plaintiff Counter-defendant is granted, giving her the right to live separate and apart from said Plaintiff Counter-defendant.
"The Plaintiff's Complaint for Divorce is denied and dismissed.
"The Defendant Counter-plaintiff's Counterclaim to set aside the Property Settlement Agreement between the parties dated December 3, 1959, is denied. The Court does not find the Agreement particularly to the liking of the Court, but the Court has not been able to determine that there is sufficient preponderance of the evidence as to any fraud, misrepresentation or mistake of fact before the Court to disturb the Agreement entered into by and between the parties to this litigation. * * *"
It should be noted that the final decree granted the wife's counterclaim for separate maintenance but enforced the separation and property settlement agreement by failing to make any monetary awards to the wife. The sole relief granted her was the right to live separate and apart from her husband.
The appellant has raised two questions in this appeal, i.e., (1) whether the chancellor erred in denying plaintiff-husband's complaint for divorce, and (2) whether the chancellor erred in granting the wife's counterclaim for separate maintenance by simply giving her the right to live separate and apart from the plaintiff.
We shall first deal with the question of whether it was error for the chancellor to refuse the husband a decree of divorce.
Where findings of the chancellor are supported by evidence or where evidence is conflicting and there is substantial evidence to support findings, the findings will not be set aside unless appellant clearly demonstrates that substantial error was committed by the chancellor, or that the findings were erroneous under the evidence. Ball v. Ball, 160 Fla. 601, 36 So.2d 172.
After a careful examination of the record, we conclude that the chancellor's decree denying the plaintiff's divorce should not be disturbed, no substantial error having been made to appear. See Travis v. Travis, 81 Fla. 309, 87 So. 762.
The appellant next contends that the chancellor was in error in granting the wife's counterclaim for separate maintenance by giving her the right to live separate and apart from the appellant. The appellant argues that the separation and property settlement agreement by its terms determined the rights of the parties to the property of each other and provided that the wife waived any and every claim for support and maintenance, agreeing not to claim or demand any support, alimony pendente lite, permanent alimony, counsel fees or expenses. Therefore, appellant *649 urges that there was no basis in law or fact to support a decree for separate maintenance and said counterclaim should have been denied. He argues that the decree is erroneous because it upholds the validity of the separate maintenance and property settlement agreement so as to prevent an award for alimony, maintenance, support or attorney fees and at the same time attempts to grant the wife's counterclaim for separate maintenance by allowing her to live separate and apart from her husband.
Appellee-wife's counterclaim for separate maintenance was brought under § 65.09, Fla. Stat., F.S.A. The object of this type of action is to compel a husband, who has committed acts that would give cause for divorce, to provide support for his wife and child. A decree under this statute cannot expressly authorize the wife to live separate and apart from the husband. Although that is probably what happens, it is not under the sanction of a court decree.
Our Supreme Court said in Bredin v. Bredin, Fla. 1956, 89 So.2d 353, 356, 61 A.L.R.2d 942:
"While a divorce decree brings about a termination and final disposition of the marriage relationship, a separate maintenance decree recognizes the continuation of the marriage relationship, the continuing right of the wife to participate in her husband's estate on his death, as well as a possibility of a reconciliation that will end the necessity for the separate maintenance award."
We construe the decree granting the wife separate maintenance by giving her the right to live separate and apart from her husband to be, in effect, a limited divorce, contrary to § 65.03, Fla. Stat., F.S.A. which provides as follows:
"No divorce shall be from bed and board, but every divorce shall be from bonds of matrimony."
See also, Givens v. Givens, 121 Fla. 270, 163 So. 574; Greenberg v. Greenberg, Fla. App. 1958, 101 So.2d 608.
The appellee takes the position in her cross-assignments of error that the separation and property settlement agreement was invalid and the chancellor erred in refusing to set it aside. The grounds for her assault upon said agreement are in essence, as follows: (1) The consideration was insufficient since the only consideration moving to the wife under said agreement consisted of payment to her of one-half of the proceeds of the sale of the property that was owned by the parties as tenants by the entireties, (2) that there was misrepresentation or mutual mistake as to the amount of money she would receive from the sale of said property, (3) that said agreement was against public policy because it was entered into between husband and wife while both continued to live together in their home and further provided that they were to continue to reside in their home until it was sold; (4) that said agreement was executed in Pennsylvania by residents of that state and provided that it was to be construed under the laws of Pennsylvania.
We can not agree with appellee's contentions. The record shows that the agreement was based upon mutual promises encompassing various rights of the parties in addition to the property already owned by them as tenants by the entireties. We find the consideration sufficient to support the agreement. See 1 Nelson, Divorce, § 13.20 (2d ed.).
Further, whether there was misrepresentation or mutual mistake are matters of fact to be determined by the chancellor upon the evidence before him. The burden was upon the wife to establish by competent evidence, fraud, deceit, duress, coercion or mutual mistake in the execution of the agreement.[2] Our study of the record *650 as it relates to this point reveals that the chancellor correctly concluded that the evidence was not sufficient to justify disturbing the agreement entered into by and between the parties.
Our appellate courts are in accord in their holdings that the chancellor's finding will not be lightly disturbed, as they are generally presumed to be correct. Picchi v. Picchi, Fla. 1958, 100 So.2d 627; Evans v. Evans, Fla. 1954, 70 So.2d 506; Joannou v. Joannou, Fla.App. 1960, 117 So.2d 40; King v. King, Fla.App. 1958, 107 So.2d 259; Talbot v. Talbot, Fla.App. 1958, 104 So.2d 410; Mickler v. Mickler, Fla. App. 1958, 101 So.2d 157.
From our examination of the agreement and the evidence adduced by the parties, we have also concluded that there is no merit in appellee's contention that the agreement was against public policy.
Finally, we find no merit to the appellee's contention that Pennsylvania law should be applied. It is true that the agreement was executed in Pennsylvania while the parties were residents of that state and that it was provided in the agreement that it would be construed according to the laws of Pennsylvania. However, this point is being raised for the first time in appellee's brief.
If the law of a foreign state is to be relied upon as governing a given transaction it must be pleaded and proved as any other issue of fact, for the local courts will not take judicial notice of it. Kingston v. Quimby, Fla. 1955, 80 So.2d 455; Miller v. Shulman, Fla.App. 1960, 122 So.2d 589.
In Hagen v. Viney, 124 Fla. 747, 169 So. 391, our Supreme Court said:
"It is quite true that the lex loci contractus governs the construction of this as it does all contracts, but the separation agreement sued on is valid in this state, and, being so, it is presumably valid in the state where executed which need not be alleged. In the interpretation of such contracts, the law of the state where the contract was executed is presumed to be the same as the law of the state where it was presented to be construed until shown by allegation and proof to be otherwise."
The chancellor was therefore correct in applying Florida law which holds this agreement valid. In addition, we find that the point is not properly before us since it was not raised in the trial court.
After duly considering all points raised by the parties we hold that the final decree appealed should be, and is, reversed insofar as it grants to the wife separate maintenance, giving her the right to live separate and apart from her husband. The remaining portion of the decree is affirmed.
Affirmed in part and reversed in part.
NOTES
[1] The substance of the agreement is as follows: The parties acknowledged that they were residents of Pennsylvania and that differences had arisen between them and that they were about to live separate and apart from each other. It was agreed that in consideration of the wife's release of her marital rights in her husband's estate, the wife would receive one-half of the net proceeds of the sale of the acreage, home, apartment and shop building in Buckingham which they owned jointly, also one-half of their joint bank account of approximately $2400. The wife waived all right to claim any further or additional support from the husband, other than $25 per week which the husband agreed to pay her until she received the one-half share of the net proceeds of the sale of their realty. After receipt of these proceeds by the wife there would be no support payments due by the husband to the wife. It was further agreed that the shop machinery, tools, checking account and cash of Hieber Machinery Co. business should remain the property of the husband and the furniture would belong to the wife. The agreement further provided that in the event either party sued for divorce, the wife would not claim or demand any support, alimony pendente lite, permanent alimony, counsel fees or expenses.
[2] Cowen v. Cowen, Fla. 1957, 95 So.2d 584.